### STATE *vs.* IRA DAY.

It is essential to an indictment under the 4th section of the statute *directing the appointment of turnpike inspectors, and regulating their office and duty,* that it should charge the inspectors made an order for the repair of the road ; that they set open the gates, and directed them to be continued open until the repairs by them ordered were made, and that the person or persons indicted shut the gates without the permission either of the inspectors or of two judges of the county court.

The indictment must set forth that the inspectors had decided what repairs were required, and that they ordered the same to be made by the corporation.

The respondent was indicted for shutting a turnpike gate which had been opened by the turnpike inspectors, by virtue of the act of 1806, " directing the appointment of turnpike inspectors, and regulating their office and duty."    The jury found a verdict of guilty against the respondent, and he filed a motion in arrest for

ORANGE,
March,
1830.

State
vs.
Day.

the insufficiency of the indictment, which was overruled by the county court. The indictment was as follows :

"That at the county court begun and holden at Chelsea, within and for the said county of Orange, on the third Tuesday of December, in the year of our Lord one thousand eight hundred and twenty seven, which was the first session of said court after the first day of said December, Lebbeus Edgerton of Randolph, in said county, Darius Pride of Williamstown, in said county, and Josiah White of Chelsea, in said county, all judicious freeholders in said county, were appointed by the said court inspectors of turnpike roads within the said county, and sworn as the law directs ; and that afterwards, on the 17th day of April, A. D. 1828, the said inspectors did, on application in writing of three or more freeholders of this state, to wit, Daniel Harrington, Calvin Ainsworth, Alvah Simons, Harry Tracy, Moses Morse, jr. Warren Poole and David Watson, inspect a certain turnpike road in the said county of Orange, called the "Williamstown Centre Turnpike," on which was erected, and then standing, a turnpike gate for the collection of toll in the town of Williamstown, in said county of Orange, and that the said inspectors did on said inspection adjudge the said turnpike road to be not in such repair as it reasonably ought to be, and did then and there, to wit, on the 17th day of April, aforesaid, at said Williamstown, set open the said turnpike gate, and make and publish their order, that the said gate should continue open, and no toll be taken, until the said turnpike road should be put in repair agreeably to the charter of the said turnpike road, and until leave should be had from the said inspectors to shut the same. And the said jurors, on their oaths aforesaid, do further present, that *Ira Day* of Barre, in the county of Washington, afterwards, to wit, on the 18th day of April, A. D. 1828, before the said turnpike road was repaired, and before leave was had from the said inspectors, or from any two judges of the county court, with force and arms, at said Williamstown, well knowing the said doings and order of the said inspectors, did unlawfully and contemptuously shut the said turnpike gate, and continue to keep the said gate shut from the day last aforesaid, to the day of the finding of this bill, contrary to the form force and effect of the statute in such case made and provided, and against the peace and dignity of the state."

The case having been reserved for the opinion of the Supreme Court,

*Smith and Peck, for the respondent,* contended that, the indictment was defective in several particulars.

1. That it did not allege that, at the time the inspectors were appointed, there was any turnpike road in Orange county.

2. That it was not alleged the application made was for the inspection of the road.

ORANGE,
*March,*
1830.

State
*vs.*
Day.

3. That it was not alleged the turnpike was made, or the gate erected, by virtue of an act of the legislature, or by any authority whatever : nor was there any direct allegation that the road was a turnpike.—1 *Mass. Rep.* 517.

4. That it was not alleged the inspectors designated what repairs should be made, or that *any order for repairs was made*, either before or after opening the gate.

The words of the indictment are that the " inspectors made and published their order *that the gate should continue open, and no toll be taken*, until said turnpike road should be put in repair agreeably to the charter, &c." Now the order is, " that the gate should continue open, &c. *until* the road was put in repair, &c. ;" not that repairs should be made. The order for repairs is the sole foundation, nay, it is the *sine qua non* of the authority of the inspectors to open the gate.—6 *Conn. Rep.* 9.—*Comp. Stat.* 579, 486, *sec.* 1. This is to them what a warrant is to an officer. They could no more open the gate without first having made an order for repairs, than an officer could make an arrest without his warrant. The order is their warrant to open the gate. The indictment, then, should have averred *that an order for repairs was made*, and the order should have been set out that the court might see whether the order was such an one as the inspectors had authority to make. Thus an indictment for disobeying an order of justices must explicitly show that an order was made, and the order should be set out.—2 *Ld. Ray.* 1363.—*Salk.* 371.—2 *Hawk.* c. 25, s. 60.—4 *Co.* 42.—5 *Co.* 150.-*Stark. Cri. Plead.* 270.—2 *Chit. Cri. L.*—138, 139, *and note.*—4 *T. R.* 202.

So when persons are indicted under the 39 and 40 Geo. III. c. 106, for entering into an agreement to control manufacturers, the agreement itself must be set out, that the court may see whether it comes within the statute, and that the magistrates have not exceeded their jurisdiction.—6 *East,* 417.

Again : The respondent is made liable to the same punishment that is inflicted on those who oppose officers in the execution of their duty ; and this case is analogous in every respect to indictments in those cases, and it would seem that the same rules ought to govern in each. But when a person is indicted for resisting, or not aiding an officer, it must appear from the indictment that the arrest was lawful, and it should show for what causes, and on what proceeding, the defendant was about to be arrested, and that the officer had authority to make the arrest; and the warrant should be set out.—5 *East.* 304 ; 2 *Swift's Dig.* 325 ; 2 *Chit. Cri. L.*

ORANGE,
March,
1830.

State
vs.
Day.

70, *n.*; 11 *Mod.* 242; 2 *Ld. Ray.* 1296, 1574; *Holt,* 485; 1 *Chitt. Cri. L.* 49; 2 *Chit. Cri. L. c.* 8, *p.* 75, 144. So in an indictment for a *rescous,* the warrant and officer's authority should be shown.—8 *Mod.* 357 ;—*Stra.* 1226.

The act of closing the gate was not necessarily unlawful, but became so by particular circumstances—by the doings of the inspectors, if these proceedings were regular, and all the proceedings which render the act illegal should have been set out in the indictment.—*Hawk. b.* 2, *s.* 57 ;—*Bac. abr. Indict. G.* 1 ;—*Cowp.* 683 ;—6 *Conn. Rep.* 9.

5. But if it was not necessary to set out the order, the order as alleged, if it is possible in the nature of things to hold that the words, " the gate should be kept open and no toll be received until the road should be put in repair, &c.," amount to an order for repairs, is bad on the face of it, as no person could understand what repairs were required, and it is altogether too indefinite and uncertain.

6. That it was not alleged the corporation had any notice of the proceedings of the inspectors.

7. That the indictment did not allege that the respondent had not received permission from any two judges of *Orange* county court to shut the gate.

*Mr. Nutting, State's Attorney,* contra.—To the 1st and 2d causes of arrest, the plaintiff answers, no such allegations are necessary.—*Stat. p.* 479.

To the 3d, 4th and 5th, the indictment does allege that the inspectors ordered repairs. No matter whether the order was previous, or simultaneous, or subsequent, to opening the gate.—*Stat.* 480. Repairs are sufficiently designated—" according to the charter."—*Id certum est, quod certum reddi potest.*

To the 6th—the indictment alleges—" a certain turnpike in the county of Orange," &c.

To the 7th—the statute prescribes no mode of notifying; nor does it expressly require any notice to be given. The indictment alleges that the inspectors " made and *published* their order."

If any of the causes of arrest would, on demurrer, have been considered defects, they are all upon *common law principles* cured by verdict.—6 *Dane,* 274.

WILLIAMS, J. delivered the opinion of the Court.—The respondent was indicted for an offence under the 4th section of the

ORANGE,
March,
1830.

State
vs.
Day.

act directing the appointment of turnpike inspectors and regulating their office and duty. The offence charged against him is for shutting a gate on the Williamstown Centre Turnpike, which had been opened by the said inspectors. The respondent was found guilty, filed a motion in arrest of judgement, which was overruled. Exceptions were taken to the opinion of the court in overruling the motion, and on those exceptions the cause was passed to this Court.

The general principles in relation to indictments, gathered from cases decided, are found in most of the elementary treatises on criminal law. Those which have any application to this case are the following: Every indictment must state all such facts and circumstances as constitute the offence ; and when the act complained of becomes a crime only from its peculiar relations or circumstances, and without them would not be unlawful, then those circumstances or relations should be set forth in the indictment. And when in a statute there are provisos or exceptions in distinct clauses, they are to be taken advantage of by the person accused in defence, and need not be anticipated in the indictment by stating that he does not come within the proviso or exception. But where exceptions are in the enacting clause, it must appear in the charge that the respondent does not come within them. The act charged against the respondent of shutting the gate was not necessarily unlawful. It only became so from its connection with other circumstances, viz. that it had been lawfully opened by the turnpike inspectors, and should have remained open at the time it was shut by him. And if it was lawfully opened, the shutting the gate was not an offence, except it was shut without the permission of the inspectors or the judges of the county court. In any indictment for an offence under this act, such facts should be distinctly set forth as will shew that the gate was lawfully set open, and that it was shut without authority.

The statute under which this indictment was found makes it the duty of the inspectors, if they find any turnpike road " not in such repair as it reasonably ought to be," " to order such repairs to be made on such road as they shall deem just and reasonable." This is the first step to be taken by them, and all their after proceedings have relation to this order. The extent of the duty required of the owners of the road is ascertained by this order, and to enforce a compliance with it, they may either set open, and take effectual measures to keep open, any or all the gates on said road, or they may give to the corporation owning the road

a reasonable time to comply with the order before opening the gates, as the inspectors may think just and reasonable. When this order is made, and the gates are set open, by the inspectors, it then becomes criminal in any one to shut them without their permission or the permission of two judges of the county court in the same county. It is essential to an indictment for this offence that it should be charged that the inspectors made an order for the repair of the road ; that they set open the gates and directed them to be continued open until the repairs by them ordered were made, and that the person or persons indicted shut the gate without the permission either of the inspectors or of two judges of the county court of the county where the gate was situated.

In the indictment against the respondent it is not alleged that any such order was made by the inspectors. This is a material defect in the indictment and is not cured by the verdict. It was necessary that the inspectors should have decided what repairs were required, and ordered that the same be made by the corporation. This order should have been set forth in the indictment. It is alleged that the said inspectors " did adjudge the said turnpike road to be not in such repair as it reasonably ought to be," and that they set open the gate and made their order that it " should continue open and no toll be taken until the said road should be put in repair agreeably to the charter of the said turnpike road and until leave should be had from the said inspectors to shut the same. If this is a correct statement of the proceedings of the inspectors it is manifest that they were wholly illegal. Without ordering any particular repairs to be made, they direct that the gate shall be shut until the road was repaired agreeably to the charter, and until permission was obtained from them, leaving it vague and uncertain what was to be done by the corporation, and excluding altogether the permission to shut the gates which the statute contemplates may be obtained from the judges of the county court.

We are satisfied that the offence is not charged in this indictment with that certainty and accuracy which is requisite, and that the order made by the inspectors, if correctly described in the indictment, is not conformable to the statute.

The judgement of the county court is reversed, and
the judgement on the indictment must be arrested.

*Nutting*, for the state.
*Peck* and *Smith*, for the respondent.